## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTINA NULPH, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TURNING POINT HOLDING COMPANY, LLC; TURNING POINT OF NEW JERSEY, LLC; TURNING POINT OF BRICK, LLC; TURNING POINT OF HOBOKEN, LLC; TURNING POINT OF HOLMDEL, LLC; TURNING POINT OF LITTLE SILVER, LLC; TURNING POINT OF LONG BRANCH, LLC; TURNING POINT OF MANALAPAN, LLC; TURNING POINT OF WESTFIELD, LLC; TURNING POINT OF CHERRY HILL, LLC; TURNING POINT OF MARLTON, LLC; TURNING POINT OF MOORESTOWN, LLC; TURNING POINT OF PRINCETON, LLC; TURNING POINT OF SEA GIRT, LLC; and DOE DEFENDANTS 1-10.<br><br>Defendants. | Civil Action No.:<br><br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Christina Nulph ("Plaintiff"), on behalf of herself and all others similarly situated, alleges as follows:

### INTRODUCTION

1.      This is a class and collective action brought on behalf of "Tipped Employees" who work or have worked at restaurants operating under the trade name "The Turning Point" ("Turning Point" or the "Restaurant") that are owned, operated and/or otherwise managed or controlled Defendants Turning Point Holding Company, LLC ("TPHC"), Turning Point of New Jersey, LLC ("TP NJ"), Turning Point of Brick, LLC ("TP Brick"), Turning Point of Hoboken, LLC ("TP Hoboken"), Turning Point of Holmdel, LLC ("TP Holmdel"), Turning Point of Little Silver, LLC ("TP Little Silver"), Turning Point of Long Branch, LLC ("TP Long Branch"), Turning Point of

Manalapan, LLC ("TP Manalapan"), Turning Point of Westfield, LLC ("TP Westfield"), Turning Point of Cherry Hill, LLC ("TP Cherry Hill"), Turning Point of Marlton, LLC ("TP Marlton"), Turning Point of Moorestown, LLC ("TP Moorestown"), Turning Point of Princeton, LLC ("TP Princeton"), and Turning Point of Sea Girt, LLC ("TP Sea Girt") (collectively "Turning Point," the "Company," or "Defendants"),    and have been subject to the unlawful practices detailed herein.

2.      As detailed below, upon information and belief, each of the Turning Point entities at issue maintain common ownership and share the same employment policies, including those relating to the compensation of Tipped Employees.

3.      As such, upon information and belief, the employment practices complained of herein applicable to all Tipped Employees employed at Turning Point, as Defendants utilized common labor policies and practices at each of their locations.  Accordingly, Defendants are responsible for the employment practices complained of herein.

4.      Turning Point is a restaurant chain that, according to the Company's website, operates twelve (12) restaurants in New Jersey (including locations in Brick, Cherry Hill, Hoboken, Holmdel, Little Silver, Long Branch, Manalapan, Marlton, Moorestown, Princeton, Sea Grit, Westfield).  *See* https://theturningpoint.biz/restaurant-locations/ (last visited February 27, 2020).

5.      Defendants employ individuals in a tipped capacity, namely "servers" ("waiters and "waitresses"), "bussers," and "baristas" (collectively, "Tipped Employees"), who are and/or were subjected to Defendants' unlawful pay practices.  As Tipped Employees, these individuals were primarily responsible operating the "front of the house" and interacting with customers, including

taking customers' orders, serving them their food/drink, and removing the used plates/glasses after the customers was done eating/drinking.

6.      As explained in detail below, Defendants systematically and willfully deprived Plaintiff and other Tipped Employees of minimum wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA"), the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a *et seq.* ("NJWHL") and its implementing regulations, including N.J.C.A.12:56-14 *et seq.* (collectively, "NJ State Law"), by, among other things, failing to satisfy the notice requirements of the tip credit provisions of the FLSA and NJ State Law.

7.      Due to Defendants' unlawful failure to properly inform Tipped Employees of its intention to utilize a "tip credit" as well as its other violations of the tip credit provisions set forth herein, Defendants have improperly applied a "tip credit" against the wages paid to Plaintiff and current and former Tipped Employees.   The result of Defendants' conduct is that Tipped Employees were paid less than the mandated minimum wage.

8.      In addition, Defendants violated the FLSA and NJ State Law when they required Plaintiff and other Tipped Employees to work for subminimum wages when working in the back of the house ("BOH") as an expeditor and thus not engaged in direct customer interaction nor receiving tips from customers.   This is in contravention of applicable wage and hour laws.

9.      Further, Defendants required Plaintiff and current and former Tipped Employees to perform numerous non-tipped duties that are unrelated to their tipped occupation. This includes but is not limited to, cleaning the restaurant, cleaning the monitors, run the coffee pots thru with cleaning solutions (and then run thru with just water), polish silverware, and setting up/breaking down prep stations.   Notably, much of this work was performed either before or after the restaurant

opened/closed, necessarily meaning that Plaintiff and other Tipped Employees could not receive tips during this time.

10.     Indeed, Plaintiff was even required to spend time decorating her Turning Point location for the holidays, including hanging Christmas lights.

11.     Despite performing this unrelated non-tipped work, Defendants paid Plaintiff and current and former Tipped Employees a sub-minimum wage for performing this work.

12.     Finally, as set forth below, Plaintiff and other Tipped Employees were required to spend a significant percentage of their time (in excess of 20%) performing non-tip generating work.   This significant, non-tip generating necessarily meant that these employees were undercompensated for their hours worked.

13.     As a result of the aforementioned pay practices, Plaintiff and the members of the Classes (defined below) were illegally under-compensated for their work.

## SUMMARY OF CLAIMS

14.     Plaintiff brings this action as a collective action to recover unpaid wages, pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA" or the "Act").

15.     Plaintiff brings this suit on behalf of the following similarly situated persons:

> All current and former Tipped Employees who have worked for Defendants in the United States within the statutory period covered by this Complaint and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Collective Class").

16.     Plaintiff also brings this action as a state-wide class action to recover unpaid wages pursuant to the NJ State Laws.

17.     Specifically, Plaintiff brings this suit on behalf of a class of similarly situated persons composed of:

All current and former Tipped Employees who have worked for Defendants in the State of New Jersey during the statutory period covered by this Complaint (the "NJ Class").

18.     The Collective Class and the NJ Class are hereafter collectively referred to as the "Classes."

19.     Plaintiff alleges on behalf of the Collective Class that they are: (i) entitled to unpaid minimum wages from Defendants for hours worked for which Defendants failed to comply with the notice provisions of the tip credit and pay the mandatory minimum wage, as required by law and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*

20.     Plaintiff alleges on behalf of the NJ Class that Defendants violated the NJ State Laws by failing to comply with the tip credit provisions, as required by law, and consequently failing to pay them the appropriate minimum wages for all hours worked.

## **PARTIES**

21.     Plaintiff Christina Nulph ("Plaintiff" or "Nulph") is a resident of the State of New Jersey, living in the Borough of Lumberton, who was employed by Defendants as a "server" at their Marlton restaurant.  While employed as a Tipped Employee, Defendants failed to compensate Plaintiff properly for all hours worked.

22.     Pursuant to Section 216(b) of the FLSA, Plaintiff has consented in writing to be a plaintiff in this action.  Her Consent To Sue form is attached hereto as Exhibit A.

23.     Upon information and belief Defendant Turning Point Holding Company, LLC ("TPHC") is a holding company that is an active member in Defendant Turning Point New Jersey, LLC ("TP New Jersey").  TPHC is registered to do business in the State of New Jersey and maintains it corporate address at 1 Industrial Way West, Building D Unit G, Eatontown, NJ 07724.

24.     Upon information and belief TPHC is the 100% stockholder of each of the individual restaurant LLC's.

25.     Upon information and belief Defendant Turning Point New Jersey, LLC is an active member in Defendants Turning Point of Brick, LLC ("TP Brick"), Turning Point of Hoboken, LLC ("TP Hoboken"), Turning Point of Holmdel, LLC ("TP Holmdel"), Turning Point of Little Silver, LLC ("TP Little Silver"), Turning Point of Long Branch, LLC ("TP Long Branch"), Turning Point of Manalapan, LLC ("TP Manalapan"), Turning Point of Westfield, LLC ("TP Westfield"), Turning Point of Cherry Hill, LLC ("TP Cherry Hill"), Turning Point of Marlton, LLC ("TP Marlton"), Turning Point of Moorestown, LLC ("TP Moorestown"), Turning Point of Princeton, LLC ("TP Princeton"), Turning Point of Sea Girt, LLC ("TP Sea Girt").  TP New Jersey is registered to do business in the State of New Jersey and Commonwealth of Pennsylvania.

26.     Upon information and belief, TP NJ is the entity by which Tipped Employees are paid, and is the entity responsible for filing payroll tax returns with the state of New Jersey on behalf of Turning Point.

27.     Defendant TP Brick is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 505 Route 70, Brick, NJ 08723.  TP Brick employed Tipped Employees during the period covered by this Complaint.

28.     Defendant TP Hoboken is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 1420 Frank Sinatra Drive, Hoboken, NJ 07030.  TP Hoboken employed Tipped Employees during the period covered by this Complaint.

29.     Defendant TP Holmdel is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 2132 Route 35 South, Holmdel, NJ 07733.  TP Holmdel employed Tipped Employees during the period covered by this Complaint.

30.     Defendant TP Little Silver is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 496 Prospect Avenue, Little Silver, NJ 07739.  TP Little Silver employed Tipped Employees during the period covered by this Complaint.

31.     Defendant TP Long Branch is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 92 Ocean Avenue, Long Branch, NJ 07740.  TP Long Branch employed Tipped Employees during the period covered by this Complaint.

32.     Defendant TP Manalapan is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 55 Route 9 South, Manalapan, NJ 07726. TP Manalapan employed Tipped Employees during the period covered by this Complaint.

33.     Defendant TP Westfield is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 137 Central Avenue, Westfield, NJ 07090.  TP Westfield employed Tipped Employees during the period covered by this Complaint.

34.     Defendant TP Cherry Hill is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 606 Haddonfield Road, Cherry Hill, NJ 08002.  TP Cherry Hill employed Tipped Employees during the period covered by this Complaint.

35.     Defendant TP Marlton is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 300 Route 73 South, Marlton, NJ 08053.  TP Marlton employed Tipped Employees during the period covered by this Complaint.

36.     Defendant TP Moorestown is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 1690 Nixon Drive, Moorestown, NJ 08057. TP Moorestown employed Tipped Employees during the period covered by this Complaint.

37.     Defendant TP Princeton is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 3371 US Highway 1, Lawrenceville, NJ 08648.  TP Princeton employed Tipped Employees during the period covered by this Complaint.

38.     Defendant TP Sea Girt is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 2157 Route 35, Sea Girt, NJ 08750.  TP Sea Girt employed Tipped Employees during the period covered by this Complaint

39.     Upon information and belief, Defendants are a single and joint employer with a high degree of interrelated and unified operations, sharing a common officer.  Each of these Defendants share the common labor policies and practices complained of herein.

40.     At all relevant times during the statutory period covered by this Complaint, Defendants have transacted business within the State of New Jersey, including within this district.

41.     At all relevant times during the statutory period covered by this Complaint, Defendants have operated as a "single enterprise" within the definition of Section 203(r)(1) of the FLSA. Defendants uniformly operated its restaurants under common control for a common business purpose.

42.     Defendants are engaged in related activities, *e.g.*, activities which are necessary to the operation and maintenance of Turning Point restaurants in the State of New Jersey.

43.     Defendants are a single and joint employer with a high degree of interrelated and unified operations, sharing a common officer.  In addition, Defendants share common management between restaurant locations, share common employees between locations, as well as share common human resources and payroll services.  All of Defendants' locations share the common labor policies and practices complained of herein.

44.     Evidencing the interrelation and unified operation of the Turning Point entities, many of the entities maintain the same corporate address and all have a common ownership/management structure. Further evidence of the interrelated nature of Defendants, Turning Point maintains one website which references each location.   Further, the Company's website identifies individuals who are responsible for the Turning Point's management, including the "New Store Development and Facility Director," the "Chief Operating Officer," the "Financial & Technology Director," and the Culinary Operations Director.   *See* https://theturningpoint.biz/management/ (last visited May 11, 2020).

45.     Upon information and belief, each of these officers, while employed by TPHC, are responsible for running the Turning Point organization, which includes all the individual restaurant locations.  Indeed, none of the individual restaurant locations have their own Chief Operating Officer or Culinary Operations Director.

46.     Upon information and belief, TPHC is responsible for handling the majority of the administrative tasks for the individual restaurant locations, including the labor policies complained of herein.

47.     Upon information and belief, TPHC developed the employee handbook applicable to all of the servers at all of the individual restaurants.

48.      Upon information and belief, TPHC determines whether an employee will be paid utilizing a tip credit.

49.     Upon information and belief, TPHC hires the general managers of the individual restaurant LLC's.

50.     Upon information and belief, TPHC handles the human resources and inventory for each of the restaurant LLC's.

51.     Upon information and belief, TPHC is ultimately responsible for ensuring compliance with the FLSA and the labor laws of New Jersey.

52.     Plaintiff is unaware of the names and the capacities of those defendants sued as DOES 1 through 10 but will seek leave to amend this Complaint once their identities become known to Plaintiff. Plaintiff believes there are additional entities employing Tipped Employees that have not yet been identified. Upon information and belief, Plaintiff alleges that at all relevant times each defendant was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the Defendants.  In engaging in the alleged conduct herein, defendants acted in the course, scope of, and in furtherance of the aforementioned relationship.

## JURISDICTION AND VENUE

53.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201 *et seq*.

54.     Further, this Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

55.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants are subject to personal jurisdiction in this district.

56.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

57.     The crux of the FLSA and the NJ State Laws is, *inter alia*, that all employees are entitled to be paid mandated minimum wages for all hours worked.

58.     Contrary to these basic protections, Plaintiff and the members of the Classes were deprived of the mandated minimum wage for all hours they worked.

59.     Plaintiff and the members of the Classes are, or were, Tipped Employees employed by Defendants.

60.     Upon information and belief, all of the Defendants' locations are/were operated under uniform policies/procedures applicable to all members of the Classes, including subjecting Tipped Employees to the unlawful pay practices complained of herein.

61.     Defendants govern and administer each restaurant location in a virtually identical manner so that, among other things, customers can expect and receive the same kind of customer service regardless of the specific restaurant location that a customer visits.

62.     For example, each of Defendants' restaurant locations use the brand name "Turning Point" at their respective location, offers the same basic array of products and services to the general public, utilize the same "point of sale" ("POS") system, and have the same basic hours of operation.  Further, all the restaurant locations advertise together on the same website.

63.     Further, Defendants' restaurant locations can "share" Tipped Employees and management level personnel.  Indeed, Plaintiff is aware of Tipped Employees going from the Marlton restaurant to cover staff shortages at other restaurant locations as well as managers from other locations coming in to fill temporary vacancies at the Marlton restaurant.

64.     As such, upon information and belief, the employment practices complained of herein occurred at all of Defendants' locations as Defendants utilized common labor policies and practices at each of their locations.  Accordingly, Defendants are responsible for the employment practices complained of herein.

## Plaintiff's Experience Working For Defendant

65.     As set forth above, Plaintiff was employed by Defendants as a "server" in their Marlton restaurant location in the State of New Jersey. Plaintiff worked at this location from in or about October 2017 through February 2019.

66.     In addition to working at the Marlton location, Plaintiff also occasionally worked at the Moorestown, New Jersey, location and once filled in at the restaurant in Bryn Mawr, Pennsylvania.

67.     Plaintiff was paid an hourly cash wage rate from Defendants and earned tips from customers who chose to leave a gratuity.

68.     When working as a server, Plaintiff was not required to split her tips with anyone. Rather, Defendants required her to "tip out" (aka share a portion of her tips) to the following groups of employees if they were working with her: bussers and/or baristas.

69.     Plaintiff's hourly wage rate from Defendants was $3.13 an hour. Plaintiff does not ever recall the hourly wage being raised by Defendants above $3.13 for any day worked, irrespective of how little tips were earned or the type of work performed.

70.     Plaintiff typically worked for Defendants at the Marlton restaurant Wednesday, Thursday, Saturday, and Sunday, with her typical shift running from 7:00 a.m. to 4:30 p.m.

71.     In total, Plaintiff typically worked between 32 and 40 hours per week.  On occasion, Plaintiff would work in excess of 40 hours per week.

72.     Plaintiff recorded her work time by logging into Defendants' timekeeping system through the point-of-sale ("POS") system.

73.     Plaintiff typically started her shift approximately one-half hour before the restaurant opened to the general public and stayed anywhere from one-half hour to an hour after the last table left for the day.

74.     Defendants required Plaintiff and other Tipped Employees to arrive before the restaurants opened so that they could perform certain tasks in order to ensure the restaurant was prepared for its customers immediately upon opening.  These tasks included, among other things: making coffee; polishing silverware; making oatmeal; cutting lemons; uncovering the sauces; getting the fruit ready; and performing other general set up tasks.

75.     Defendants required Plaintiff and other Tipped Employees to stay after the last customer left and the restaurant closed for the day so that they could perform certain tasks in order to ensure the restaurant was cleaned and prepared for the following day's business. These tasks included, among other things: (i) vacuuming the restaurant; (ii) resetting the server station; (iii) cleaning the monitors; (iv) sweeping under the tables; (v) filling the salt/pepper/sugar caddies; (vi) filling the ketchup and "marrying" the bottles (where necessary); (vii) filling the dressings and ensuring there was sufficient back up; (viii) cleaning the coffee pots; (ix) cleaning the restaurant's baseboards, and (x) hanging or removing seasonal holiday decorations.

76.     Plaintiff was also required to perform various non-tip generating tasks during the course of her shift.  Plaintiff estimates that approximately one-third of her time, or more, was spent performing such "side work."

77.     Notably, Plaintiff was never instructed to clock in under a different job code when performing non-tip generating work or when working prior to or after the restaurant opened/closed. Indeed, to the best of Plaintiff's knowledge, Defendants did not keep track of such time separately from Plaintiff's entries into the POS system.

78.     The precise amount of time Plaintiff recorded as working each week, upon information and belief, is maintained in Defendants' employment and/or payroll records.

79.     In addition to her duties as a server, Plaintiff was required to periodically work as an expediter ("Expo") handing prepared food to other servers in the kitchen.

80.     When working as an Expo, Plaintiff was unable to earn tips.  In spite of this, Plaintiff was only paid $5.00 per hour when working as an Expo.

81.     Plaintiff estimates that during the course of her employment with Defendants, she worked approximately 5 to 6 shifts as an Expo person.

82.     Upon information and belief, Defendants recently changed their pay practices and are now paying Expo personnel $12.00 per hour.

### The Tip Credit Provision & Requirements

*FLSA Requirements*

83.     Rather than pay its Tipped Employees the applicable minimum wage (either the applicable state minimum wage or the federal minimum wage, whichever is higher), Defendants chose to take a tip credit and pay these employees less than the applicable minimum wage.

84.     Under applicable law, in certain circumstances, it is permissible for an employer to take a tip credit and pay its employees less than the mandated minimum wage, provided that the employee's tips received from customers plus the cash wage paid by the employer equals at least the applicable minimum wage.[1]

---

[1] An employer is not relieved of their duty to pay an employee wages at least equal to the minimum wage by virtue of taking a tip credit or by virtue of the employee receiving tips from customers in an amount in excess of the applicable minimum wage.  That is, an employer in the restaurant industry must pay the employee wages at least equal to the minimum wage or equal to the minimum wage less the tip credit, provided the tips claimed exceed the tip credit.  Under no circumstances is the employer relieved of paying at least the minimum wage for all hours worked, regardless of how much an employee earns in tips.

85.     According to the Department of Labor's ("DOL") Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) ("Fact Sheet #15"):

> the maximum tip credit that an employer can currently claim under the FLSA is $5.12 per hour (the minimum wage of $7.25 minus the minimum required cash wage of $2.13).

86.     As is made plain in Fact Sheet #15, in order to claim a tip credit, the employer must comply with five strict notification requirements.

87.     First, the employer must notify the employee of the amount of the cash wage the employer is paying the Tipped Employee and that amount must equal at least $2.13 per hour.

88.     Second, the employer must notify the Tipped Employee of the amount the employer is claiming as a tip credit.  In accordance with the FLSA, the tip credit claimed cannot exceed $5.12 per hour.

89.     Third, the employer must inform the Tipped Employee that the tip credit claimed cannot exceed the actual amount of tips received by the employee.  In effect, the employer must inform the employee that the employee must still earn the mandated minimum of $7.25 per hour between the amount of the tip credit taken by the employer and the amount of tips earned by the employee.

90.     Fourth, the employer must notify the Tipped Employee that all tips received are to be retained by the employee except for a valid tip pooling arrangement.

91.     Finally, the Tipped Employee must be informed by the employer that the tip credit will not apply unless the employee has been informed of these provisions.

92.     In short, Fact Sheet #15 effectively sets forth in plain English what is required under the regulations, including 29 C.F.R. § 531.59(b), for an employer to properly claim a tip credit.[2]

93.     An employer bears the burden of showing that it has satisfied all of the notification requirements before any tips can be credited against the employee's hourly wage.[3]  If an employer cannot demonstrate its compliance with this notification requirement, no credit can be taken and the employer is liable for the full minimum wage.

94.     Further, where a tipped employee earns less in tips than the tip credit claimed, the employer is required to make up the difference.  Stated another way, if a tipped employee earns less than $5.12 per hour in tips (the maximum tip credit permissible where the employer pays the employee $2.13 per hour), the employer must raise that tipped employee's hourly cash component the necessary amount above $2.13 per hour so as to ensure that the employee earns at least $7.25 per hour – the mandated minimum wage.

95.     As set forth herein, Defendants failed to comply with certain of the FLSA's provisions regarding the claiming of a tip credit.

### New Jersey's Requirements

96.     New Jersey mandates a higher minimum cash wage and requires employers to pay at least $3.13 per hour.  Thus, under New Jersey law, the maximum tip credit is $7.87 per hour.

---

[2] Importantly, courts have held that 29 CFR § 531.59(b), which requires disclosure of the five requirements of the tip credit provision, simply reaffirms what employers were required to do under the statute.  *See, e.g., Howard v. Second Chance Jai Alai LLC*, No: 5:15-cv-200, 2016 U.S. Dist. LEXIS 78538, *11 (M.D. Fl. June 16, 2016) ("expressly requiring the disclosure of five specific provisions, as in the final amended rule, does not require employers to do any more than what they were already obligated to do under section 203(m)").

[3] Courts have strictly construed this notification requirement.  Accordingly, some courts have held that a generic governmental poster (which is required by the DOL) does not satisfy the tip credit notification requirement.

97.     As such, an employer cannot be said to have complied with New Jersey's tip credit notification requirements where the employer simply relies on United States Department of Labor mandated posters, as said posters do not explicitly identify the tip credit amount in New Jersey (as it differs from the FLSA tip credit amount).

98.     Moreover, under NJ State Law, an employer may pay a tipped employee as low as $3.13 per hour only if the employer can "demonstrate that the balance of the . . . minimum wage required under State law is paid through gratuities in accordance with N.J.A.C. 12:56-4 and 12:56-8." N.J.A.C. 12:56-14.4(b).

99.     With respect to the gratuities requirement, under NJ State Law the employer must have an agreement with its employees regarding how tips are calculated and that agreement must either be based on actual tips received, gross sales, or a method approved by the Commissioner. N.J.A.C. 12:56-8.4.

100.    Thus, under the NJ State Law, an employer may not take advantage of the tip credit unless they satisfy the recordkeeping requirement, which requires employers to keep records "containing the total gratuities received by each employee during the payroll week." N.J.A.C. 12:56-4.6.

### Defendants' Failure To Comply With Applicable Wage Laws

101.    As explained above, the DOL has very specific requirements regarding what an employer must notify his/her employee of if that employer intends to claim a tip credit.

102.    Rather than comply with the notification requirements set forth in the regulations and made plain in Fact Sheet #15, Defendants chose to simply pay their Tipped Employees $3.13 per hour. In short, Defendants failed to conform to the strict regulatory requirements necessary to satisfy the tip credit notification provisions.

103.     The Third Circuit and district courts across the country have held that where an employer fails to satisfy any one of the notification requirements, the employer forfeits the tip credit and must pay the employee the full minimum wage.

104.     Plaintiff does not ever recall being notified by Defendants that they could not take a tip credit unless they informed Plaintiff about their intent to take a "tip credit."

105.     Nor does Plaintiff recall being informed by Defendants that they could not take a tip credit in excess of how much she earned in tips.

106.     As set forth above, these acts constitute violations of the tip credit requirements. *See, e.g.,* 29 U.S.C. § 203(m); 29 CFR § 531.59(b).

107.     Further, Plaintiff recalls managers and/or Defendants' own POS system supplying an amount the servers were required to claim as tips, even if they had not earned that much in tips during their shift, in order to make it appear as though servers had earned at least minimum wage. If servers did not comply and input this amount, the managers would override the server's tip claim and change the amount in the POS system.

108.     In addition to the notification requirements, NJ State Law, as noted above, imposes additional requirements on employers in the restaurant industry who wish to utilize the tip credit provisions to satisfy their minimum wage requirements.

109.     Thus, if Defendants did not keep accurate records of the actual tips received by Tipped Employees based on statements provided by Tipped Employees or on customers' bills, they also failed to comply with NJ State Law insofar as there was no agreement between Defendants and the Tipped Employees that the tip credit claimed by Defendants was an "average" that was based on actual tips received, gross sales, or a method approved by the Commissioner.

110.    Rather, Defendants took the maximum tip credit permissible irrespective of whether their Tipped Employee actually earned sufficient tips to legally warrant Defendants' tip credit claim.

111.    In fact, on occasions where Tipped Employees reported having earned less than minimum wage, Defendants unilaterally inflated the amount of tips recorded by their Tipped Employees in the POS system to reflect that those employees had actually received enough in tips to earn minimum wage.

112.    Through these practices, Defendants ensured that even when its Tipped Employees failed to receive enough in tips to earn minimum wage, Defendant nonetheless claimed the maximum tip credit anyway.

113.    Thus, based on these practices, Defendants could not have complied with NJ State Law which, among other things, requires an employer to satisfy the recordkeeping requirement (e.g., N.J.A.C. 12:56-4.6) when claiming a tip credit.

114.    Stated another way, under NJ State Law, Defendants could not claim a tip credit unless they first demonstrated compliance with the recordkeeping provisions.  Due to Defendants' altering of the records, no one can reasonably assert that the recordkeeping provisions were satisfied in the instant matter.

115.    Defendants also failed to comply with applicable wage laws insofar as Defendants took the maximum tip credit permissible for every hour worked by its Tipped Employees, including Plaintiff, irrespective of whether its Tipped Employees (i) actually earned sufficient tips to substantiate the tip credit claimed or (ii) whether the employees were engaged in tip generating work.

116.     Because of the above violations, Defendants owe Plaintiff and the other Tipped Employees the amount taken as a tip credit for every hour they worked and were paid an hourly wage below the standard minimum wage.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

117.     Plaintiff brings this action on behalf of the Collective Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b).  Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the NJ Class for claims under the NJ State Laws.

118.     The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. §216(b).  The claims brought pursuant to the NJ State Laws may be pursued by all similarly-situated persons who do not opt-out of the NJ Class pursuant to Fed.R.Civ.P. 23.

119.     Upon information and belief, the members of each of the Classes are so numerous that joinder of all members is impracticable.  While the exact number of the members of these Classes is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, given that Defendants operate multiple restaurants, there are likely dozens of individuals in each of the Classes.[4]

120.     Defendants have acted or has refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole, appropriate.

---

[4] Indeed, Plaintiff estimates that while she was employed at the Marlton restaurant, there were approximately 7 to 9 servers scheduled to work on a weekend shift.

121.    The claims of Plaintiff are typical of the claims of the Classes she seeks to represent. Plaintiff and the members of the Classes work or have worked for Defendants and were subject to the same compensation policies and practices.

122.    Common questions of law and fact exist as to the Classes that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a)    whether Defendants have failed to pay the full minimum wage for each hour worked;

(b)    whether Defendants satisfied each of the requirements in order to claim a tip credit against each hour worked;

(c)    whether Defendants were precluded from claiming the tip credit during the period encompassed by this Complaint; and

(d)    whether Plaintiff and members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages.

123.    Plaintiff will fairly and adequately protect the interests of the Classes as her interests are aligned with those of the members of the Classes.  Plaintiff has no interests adverse to the Classes she seeks to represent and has retained competent and experienced counsel.

124.    The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy.  The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

125.    Plaintiff and the Classes she seeks to represent have suffered and will continue to suffer irreparable damage from the illegal policy, practice and custom regarding Defendants' pay practices.

126.    Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a) and willful violation of NJ State Law.

### FIRST CLAIM FOR RELIEF
### FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS
**(On Behalf of the Collective Class)**

127.    Plaintiff, on behalf of herself and the Collective Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

128.    At all relevant times, Defendants have had gross revenues in excess of $500,000.

129.    At all relevant times, Defendants have been and continues to be, an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

130.    At all relevant times, Defendants have employed, and/or continues to employ, Plaintiff and each of the Collective Class Members within the meaning of the FLSA.

131.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the federally-mandated minimum wage, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage.

132.    Defendants have violated and, continues to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

133.    Due to Defendants' FLSA violations, Plaintiff, on behalf of herself and the members of the Collective Class, are entitled to recover from the Defendants, compensation for

unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**NEW JERSEY MINIMUM WAGE VIOLATIONS**
**(On Behalf of the NJ Class)**

134.    Plaintiff, on behalf of herself and the NJ State Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

135.    At all relevant times, Defendants employed Plaintiffs and each of the NJ Class Members within the meaning of the NJ State Law.

136.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the applicable New Jersey minimum wage, Defendants improperly took a tip credit and paid Tipped Employees at a rate well below New Jersey's minimum wage.

137.    At relevant times in the period encompassed by this Complaint, Defendants had a willful policy and practice of failing to satisfy the notification requirements in order for Defendants to claim the tip credit.

138.    Moreover, due to Defendants' practices of having Tipped Employees claim tip amounts at least equal to the tip credit, regardless of whether they earned that actual amount, Defendants cannot be said to be in compliance with N.J.A.C. 12:56-14 *et seq*.

139.    As a result of Defendants' willful practices, Defendants were not entitled to claim the tip credit and pay Plaintiff and the members of the NJ Class less than the New Jersey minimum wage for all hours worked.

140.    Due to the Defendants' violations, Plaintiff, on behalf of herself and the members of the NJ Class, is entitled to recover from Defendants the amount of unpaid minimum wages, attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and/or on behalf of herself and all other similarly situated members of the Collective Class and members of the NJ Class respectfully requests the Court grant the following relief:

A.      Designation of this action as a collective action on behalf of the Collective Class and prompt issuance of notice pursuant to 29 U.S.C. §216(b), apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b);

B.      Designation of the action as a class action under F.R.C.P. 23 on behalf of the NJ Class;

C.      Designation of Plaintiff as representative of the Collective Class and the NJ Class;

D.      Designation of Plaintiff's counsel as class counsel for the Collective Class and the NJ Class;

E.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NJ State Law;

F.      An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

G.      An award of unpaid minimum wages to Plaintiff and the members of the Classes;

H.      An award of liquidated damages to Plaintiff and members of the Classes;

I.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiff and members of the Classes; and

J.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

a trial by jury on all questions of fact raised by the complaint.


Dated: May 19, 2020                              Respectfully submitted,

                                              By: */s/ Edward W. Ciolko*

                                              **CARLSON LYNCH LLP**
                                              Edward Ciolko (NJ ID# 005462002)
                                              1133 Penn Ave, 5th Floor
                                              Pittsburgh, PA 15222
                                              T: 412-322-9243
                                              F: 412-231-0246
                                              eciolko@carlsonlynch.com

                                              **CONNOLLY WELLS & GRAY, LLP**
                                              Gerald D. Wells, III
                                              Robert J. Gray
                                              101 Lindenwood Drive, Suite 225
                                              Malvern, PA 19355
                                              Telephone: 610-822-3700
                                              Facsimile: 610-822-3800
                                              gwells@cwglaw.com
                                              rgray@cwglaw.com

                                              *Attorneys for the Plaintiff and the*
                                              *Proposed Classes*